# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | RONALD A. GUZMÁN | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 2000 C 0233 | **DATE** | 2/8/01 |
| **CASE TITLE** | Allan Shubert (B-45806) v. D. Johnson, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)    ☐ General Rule 21    ☐ FRCP41(a)(1)    ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. The court's memorandum opinion and order dated October 3, 2000 is vacated and the attached memorandum and order substituted. Defendants' motion to dismiss [14-1] is granted in part and denied in part. Defendants Hollins and Johnson are directed to answer the complaint within thirty days of this order. Plaintiff's motion for extension of time [16-1] is denied as moot. Status set for February 14, 2001 is stricken. IDOC records show that plaintiff is now reincarcerated at Menard Correctional Center. The clerk is directed to send a copy of this order to Schubert at Menard Correctional Center and send a copy of the court's April 3, 2000 order to the trust fund officer at Menard Correctional Center.

(11) ■ For further detail see order attached to the original minute order.

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| X | Docketing to mail notices. | | | 21 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | 01 FEB -9 PM 2:40 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ALLAN SCHUBERT | ) | |
| Plaintiff, | ) | |
| | ) | No. 2000 C 0233 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| LT. D. JOHNSON, ET AL. | ) | |
| Defendants. | ) | |

DOCKETED FEB 1 2 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff Alan Schubert brought this pro se civil rights action pursuant to 42 U.S.C. § 1983 against various officials of the Illinois Department of Corrections (IDOC) employed at Stateville Correctional Center (Stateville). Schubert's original complaint named as defendants Lieutenant D. Johnson, Sergeant Hollins, Hearing Investigator S. Backstrom, Reviewing Officer D. Jennings, "Authoritative Counselor" D. Essenpreis, Grievance Officer G. Schonauer,[1] Chief Administrative Officer D. Clark, Chairperson P. Tinsley, and IDOC Director D. Snyder. On April 3, 2000, the court allowed Schubert to proceed with his First and Eighth Amendment claims against Johnson and Hollins and dismissed all claims against defendants Jennings, Backstrom, Essenpreis, Schonauer, Clark and Tinsley.

On June 1, 2000, Schubert filed a paper captioned "Plaintiff's Amendment Of Complaint To Reflect Proper Pleadings." This was not an amended complaint, but consisted of corrections and additional allegations which, Schubert hoped, would induce the court to reconsider its April 3, 2000 order. The remaining defendants, not having received this filing, moved on June 9, 2000 to dismiss the original complaint pursuant to Rule 12(b)(6). The court will review Schubert's

---

[1] The name is spelled "Schoneur" in the original complaint, but "Schonauer" in the proposed amendments.



proposed amendments under 28 U.S.C. §1915(e)(2)(B)(ii), as well as defendants' motion to dismiss.[2]

## I. ALLEGATIONS OF THE COMPLAINT

At the time of the events alleged in the complaint, Schubert was an inmate confined in 3-B-wing of I-House, the segregation unit at Stateville. On November 27, 1998, Schubert became involved in a verbal dispute with defendant Hollins over Hollins' decision to use chemical mace on another inmate who had disobeyed an order to uncuff. According to the complaint, after Hollins said he would use mace, the other inmate agreed to uncuff but Hollins told him he would mace him anyway. Schubert protested, but alleges that he intended merely to tell Hollins that what he was going to do was unconstitutional and he risked a lawsuit. Hollins was upset that Schubert was interrupting him while he was performing his duties and told him so. The verbal confrontation escalated until Schubert said, "Well, mace them and see what happens." Hollins took this as a threat, and directed another correctional officer to handcuff Schubert. Schubert attempted to clarify his words but defendant Johnson intervened on behalf of Hollins. Schubert complied with the orders of Johnson and Hollins to cuff up without resistance and was escorted to the I-house main bullpen.

Correctional Officer Sternum, at the direction of Johnson and Hollins, then placed Schubert in a "strip-cell." The cell lacked running water and a working toilet, and Schubert was denied toiletries, clothing, and any personal property, including legal papers. His mattress was tainted with feces and smelled of urine. It was cold in the cell, but Schubert's requests for a jumpsuit, hygiene supplies and running water were denied, allegedly by order of Johnson and Hollins. Schubert was confined in the strip-cell for over three days.

---

[2] This memorandum opinion replaces an opinion issued October 3, 2000.

After Schubert's release from the strip-cell he was issued a disciplinary ticket for the November 27, 1998 incident. At the hearing before the institutional adjustment committee on December 1, 1998, Schubert requested additional time to submit a written report to include witnesses, as he had been denied writing materials in the strip-cell. This request was denied. On December 10, 1998, Schubert submitted grievances concerning the conduct of Officers Hollins and Johnson on November 27, 1998. Head Counselor Essenpreis responded to the grievance in favor of the officers on December 17, 1998. Grievance Officer Schonauer also denied Schubert's grievance on January 8, 1999. Schonauer apparently based her decision on the adjustment committee hearing, in which Schubert could not submit a written statement. On January 11, 1999, the warden, defendant Clark, concurred with his subordinates' decision and denied Schubert's grievance. Schubert appealed to IDOC's Administrative Review Board on January 21, 1999. A hearing was held on April 17, 1999 before Chairperson Tinsley, who allegedly refused to allow Schubert to explain his account of the story. Schubert's remaining grievances were denied on July 21-22, 1999.

## II. SCHUBERT'S PROPOSED AMENDMENTS

Schubert's proposed amendments in response to the court's April 3, 2000 order are intended to clarify his claims against Essenpreis, Schonauer, Clark, Tinsley and Snyder. Schubert contends that these defendants violated his constitutional rights by failing to apply relevant departmental rules when they denied his grievances. Schubert also contends that the defendants who denied his grievances failed to conduct any review of facility records or any investigation upon which to base their decision, and that their decisions to deny his grievance were arbitrary and capricious. Finally, Schubert alleges that the defendants are culpable because they were aware of "Johnson's past abuse of authority."

As the court stated in its April 3, 2000 order, prisoners do not have a constitutional right to a grievance procedure. Any alleged failure by defendants to comply with IDOC rules does not state a cognizable claim under Section 1983 unless it also constitutes a constitutional violation. *See Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988), *cert. denied* 476 U.S. 1178 (1989). Illinois has created by statute a grievance procedure which entitles inmates to present their complaints to prison officials. Nevertheless, this is merely a procedural right; since it confers no right to any particular outcome it does not give rise to a liberty interest protected by the Fourteenth Amendment. *Antonelli v. Sheahan*, 81 F.3d 1422, 1430-31 (7th Cir. 1996).

While Schubert has a constitutional right not to be mistreated in custody, that right is enforceable by a suit against the officers personally responsible. Schubert does not have a constitutional right to compel IDOC to investigate the officers or discipline them. Failure to take corrective action afterwards does not in itself render supervisors liable. *Cygnar v. City of Chicago*, 865 F.2d 827, 847 (7th Cir. 1989). Because supervisory defendants' failure to investigate did not cause Schubert's injury, it does not support a claim under § 1983. *Vukadinovich v. McCarthy*, 901 F.2d 1439, 1444 (7th Cir. 1990), *cert. denied*, 498 U.S. 1050 (1991).

The court accordingly reaffirms its order dismissing Jennings, Backstrom, Essenpreis, Schonauer, Clark and Tinsley. The court inadvertently did not address plaintiff's claims against IDOC Director Donald Snyder in its April 3, 2000 order. The court's reasons for dismissing the due process claims against the other defendants applies to Snyder as well, and he is also dismissed.

### III. DEFENDANTS' MOTION TO DISMISS

#### A. Standard of Review

In considering a motion to dismiss, the court must accept as true all well-pleaded facts and must draw all reasonable inferences from those allegations in Schubert's favor; a complaint shall only be dismissed if it is beyond doubt that the Schubert can prove no facts which would entitle

4

him to relief. *MCM Partners, Inc. v. Andrews-Bartlett & Assoc.*, 62 F.3d 967, 972 (7th Cir. 1995). Furthermore, when confronted with a pro se complaint, the court must employ a more liberal standard of review than would be used where an attorney prepared the complaint. *Haines v. Kerner*, 404 U.S. 519 (1972); *Whitford v. Boglino*, 63 F.3d 527, 535 (7th Cir. 1995).

In its April 3, 2000 order, the court allowed Schubert to proceed on his First and Eighth Amendment claims against Hollins and Johnson. Their motion to dismiss is directed towards those claims and any due process claims relating to Schubert's disciplinary hearing. As discussed above, the due process claims remain dismissed. The court will address Schubert's Eighth and First Amendment claims relating to his placement in the strip-cell.

### B. Eighth Amendment Claim

Schubert's placement in the strip-cell amounted to cruel and unusual punishment proscribed by the Eighth Amendment only if it satisfies a two-part test having both a subjective and an objective component. Objectively, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991)(*quoting Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Subjectively, conditions amount to "punishment" only if they are imposed intentionally or with deliberate indifference. *Seiter*, 501 U.S at 303.

Taking the allegations of the complaint as true, the subjective test is met: Hollins and Johnson's ordering Schubert to be confined in the strip-cell was intended as punishment for Schubert's arguing with them. Defendants assert that Schubert has failed to satisfy the objective prong of the Eighth Amendment, arguing that the conditions in the strip-cell were not severe enough to amount to cruel and unusual punishment as a matter of law. The court disagrees.

"[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Nevertheless, "conditions must not involve the wanton and unnecessary infliction

5

of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment," nor may they "deprive inmates of the minimal civilized measure of life's necessities." *Id.* at 347. In *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992), the Supreme Court explained that the objective and subjective tests are to a limited extent interrelated, because what is necessary to show sufficient harm (the objective test) depends upon the kind of claim. Since the Eighth Amendment's prohibition of cruel and unusual punishment "'draw[s] its meaning from the evolving standards of decency that mark the progress of a maturing society,'" *Hudson*, 503 U.S. at 8 (*quoting Trop v. Dulles*, 356 U.S. 86, 101 (1958)(plurality opinion)), "the objective component of an Eighth Amendment claim is therefore contextual and responsive to contemporary standards of decency." *Id.*

Contrasting Eighth Amendment cases arising from prison conditions with those involving excessive force, the Court stated that "extreme deprivations are required to make out a conditions-of-confinement claim," "because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson*, 503 U.S. at 9 (*quoting Rhodes*, 452 U.S., at 347)). On the other hand, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Id.* The Court held that the plaintiff could maintain an Eighth Amendment claim for excessive force even though his injuries were minor; "[o]therwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today." *Id.* The Court qualified that statement by adding, "[t]hat is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. [citation] The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 9-10 (citations omitted).

6

Putting Schubert in a strip-cell for more than three days in retaliation for Schubert's verbal challenge to Hollins' treatment of another inmate could be found to be a "malicious and sadistic use of force to cause harm." The Eighth Amendment not only forbids kicks or punches, but the "unnecessary and wanton infliction of pain." *Hudson*, 503 U.S. at 10 (*quoting Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

To be sure, deprivations and discomforts are part of the expected incidents of prison life, and some things are beneath the level of constitutional concern. *Compare Lunsford v. Bennett*, 17 F.3d 1574, 1579-580 (7th Cir. 1994) (no claim where inmates denied toilet paper, personal hygiene items and cleaning supplies for 24-hour period), *with Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989)(court could not conclude that placing prisoner in filthy cell without water for three days does not violate Eighth Amendment). Nevertheless, the objective test boils down to whether the acts and practices complained of are "such acts or practices as would be deemed cruel and unusual if prescribed in a state or federal statute as the lawful punishment for a particular offense." *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). The Illinois legislature has prohibited "corporal punishment and disciplinary restrictions on diet, medical or sanitary facilities, mail or access to legal materials." 730 ILCS 5/3-8-7. While a federal court does not enforce violations of Illinois law, this is at least some evidence of "the evolving standards of decency that mark the progress of a maturing society" by which Eighth Amendment claims are to be judged. The court cannot say, as a matter of law, that the conditions inflicted upon Schubert in this context were *de minimis* and did not amount to cruel and unusual punishment.

### C. First Amendment Claim

Alternatively, even if Schubert's sojourn in the strip-cell did not amount to cruel and unusual punishment, an otherwise lawful act done in retaliation for the exercise of a constitutionally protected right violates the Constitution. A prison official may not retaliate against a prisoner

7

because he files a grievance or complains to a prison official, as this amounts to a violation of the prisoner's First Amendment right to seek redress of grievances. *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000); *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267, 274-75 (7th Cir. 1996); *Black v. Lane*, 22 F.3d 1395, 1402-03 (7th Cir. 1994). Obviously, prisoners' First Amendment rights are limited by their prisoner status and legitimate penological interests. *See, e.g., Thornburgh v. Abbott*, 490 U.S. 401 (1989)(prisoners' right to send and receive mail); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987)(prisoners' right to religious practice). Nevertheless, taking the allegations of the complaint as true, Schubert had a First Amendment right to tell Hollins that it would be unlawful for him to mace a prisoner who had agreed to submit.[3/] Schubert has stated a claim for retaliation.

### D. Qualified Immunity

Defendants argue they are entitled to qualified immunity. Government officials performing discretionary functions are entitled to a qualified immunity that shields them from damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Immunity turns on the objective legal reasonableness of the action in light of the legal rules that were clearly established at the time it was taken. In order to be "clearly established," the contours of a right asserted must be sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "The purpose of [qualified immunity] is to shield public officers from liability consequent upon either a change in law after

---

[3/] That position is basically correct. When a correctional officer inflicts pain as part of an attempt to assert control or restore order, the relevant question is whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm. *Whitley v. Albers*, 475 U.S. 312, 321-22 (1986). Prisoners may be subdued with chemical agents, but not in quantities greater than necessary or for the sole purpose of punishment or inflicting pain. *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984).

8

they acted or enduring legal uncertainty that makes it difficult for the officer to assess the lawfulness of the act in question before he does it." *Ralston v. McGovern*, 167 F.3d 1160, 1162.

Taking the allegations of the complaint as true, the court cannot accept defendants' contention that a reasonable correctional officer would not have known that under the circumstances it violated Schubert's rights to confine him in a strip-cell for three days in retaliation for a verbal protest. Defendants knew how to (and did) invoke the prison disciplinary process against Schubert, but that was apparently not enough to satisfy their desire to make him suffer. *See Duckworth v. Franzen*, 780 F.2d 645, 652 (7th Cir. 1985) ("If a guard decided to supplement a prisoner's official punishment by beating him, this would be punishment, and 'cruel and unusual' since the Supreme Court has interpreted the term to forbid unauthorized and disproportionate, as well as barbarous, punishments"), *cert. denied*, 479 U.S. 816 (1986).

*Hudson* and its forerunners established that "unnecessary and wanton infliction of pain" violates the Eighth Amendment, and that there is no requirement that the prisoner suffer significant physical injury beyond the physical discomfort itself. The court acknowledges that there are cases holding that placement in "strip-cell" conditions for a few days does not constitute cruel and unusual punishment, but such cases usually involved violent, psychotic or suicidal prisoners where there was reason to believe that the prisoner might hurt himself, destroy personal property or use running water to flood the cell. In other words, the drastic deprivation served a legitimate purpose and was neither unnecessary nor wanton. *See e.g., Williams v. Delo*, 49 F.3d 442 (8th Cir. 1995); *Anderson v. County of Kern*, 45 F.3d 1310 (9th Cir. 1994); *Sims v. Mashburn*, 25 F.3d 980 (11th

Cir. 1994).[4] Taking the allegations of the complaint as true, Schubert presented no such threat, and his confinement in the strip cell served only to indulge defendants' anger. A reasonable officer would have known that to be constitutionally unacceptable.

## IV. CONCLUSION

The court reaffirms its earlier ruling dismissing Schubert's due process claims, notwithstanding Schubert's supplemental allegations. Defendants' motion to dismiss is granted in part and denied in part. Donald Snyder is dismissed as a defendant. Schubert may proceed on his Eighth and First Amendment claims against Hollins and Johnson, who are directed to answer the complaint within thirty days of this order.

Public IDOC records show that after having been released, Schubert has been reincarcerated at Menard Correctional Center. Schubert should promptly file a notice of change of address with the court. The clerk is directed to send a copy of this order to Schubert at Menard Correctional Center, as well as send a copy of the court's April 3, 2000 order to the trust fund officer at Menard Correctional Center so that the appropriate deductions and payments will be made.

IT IS SO ORDERED.

Dated: 2/08/17

Ronald A. Guzmán, Judge
U.S. District Court

---

[4] The Eighth Circuit appears to have conflated *Rhodes*' holding that the deprivation of "the minimal civilized measure of life's necessities" violates the Eighth Amendment with that of *Farmer v. Brennan*, 511 U.S. 825 (1994), that correctional officers may be liable only for knowingly ignoring a risk to inmate health or safety, concluding that if a deprivation does not present a serious risk to inmate health or safety the Eighth Amendment is not violated. *See Key v. McKinney*, 176 F.3d 1083, 1086 (8th Cir. 1999); *Williams*, 49 F.3d at 445-46 (8th Cir. 1995). This ignores the word "civilized" in the quotation from *Rhodes*. There would probably be no risk to inmate health or safety if inmates were crowded naked into large rooms, constantly manacled and force-fed daily through stomach tubes. Obviously, minimal human dignity goes beyond preserving physical health. *Farmer*, which directly involved a threat to inmate safety, should not be read as limiting *Rhodes*, which did not, and it has not been so read by the Seventh Circuit.